IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

LILLIAM RIVERA-FREYTES,

    **Plaintiff,**

        **v.**                    **CIVIL NO.** 11-1735 (FAB)

COMMONWEALTH OF PUERTO RICO, *et al.*,

    **Defendants.**

**OPINION AND ORDER**

BESOSA, District Judge.

    Before the Court is defendant Guillermo Somoza-Colombani's motion to dismiss the case against him for failure to state a claim. (Docket No. 14.) For the reasons set forth below, defendant Somoza's motion to dismiss is **DENIED** in part and **GRANTED** in part.

**DISCUSSION**

**I.   Procedural Background**

    On July 28, 2011, plaintiff Lilliam Rivera-Freytes ("plaintiff" or "Rivera") filed a complaint alleging gender discrimination and sexual harassment pursuant to Title VII, 42 U.S.C. § 2000 ("Title VII") and 42 U.S.C. § 1983 ("section 1983"). (Docket No. 14 at ¶¶ 111, 115, & 119.) Pursuant to section 1983, she alleges two constitutional violations associated with all defendants' actions: the denial of equal protection and due

process pursuant to the Fourteenth Amendment to the United States Constitution.  Id. at ¶¶ 115 & 119.   She is suing all the defendants in their individual capacities for damages.  Id. at ¶¶ 3-8.  Plaintiff also asserts that the Court has supplemental jurisdiction over her claims filed pursuant to the Puerto Rico Civil Code and to the Puerto Rico Constitution.[1]  Id. at ¶¶ 122-39.

On September 19, 2011, defendant Somoza filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)").   On October 16, 2011, plaintiff filed her opposition to defendant Somoza's motion to dismiss (Docket No. 21.) On November 1, 2011, defendant Somoza filed his reply (Docket No. 35), and on November 16, 2011, plaintiff filed a sur-reply (Docket No. 56.)

## II.  Factual Background

In her complaint, plaintiff Rivera alleges the following facts:

She is a former employee of the Department of Justice of the Commonwealth of Puerto Rico ("PR DOJ").  (Docket No. 1 at p. 1.) Rivera was an agent for the Witness Protection Program ("WPP"),

---

[1] Plaintiff brings claims pursuant to the following laws of the Puerto Rico Law 17, P.R. Laws Ann. tit. 29, § 155; Law 80, P.R. Laws Ann. tit. 29, § 185; and article 1802 of the Civil Code, P.R. Laws Ann. tit. 31, Section 5141.  In addition, plaintiff alleges that defendants violated Article II of the Constitution of Puerto Rico.  (Docket No. 1 at ¶¶ 128-139.)

which is overseen by the PR DOJ's "Negociado de Investigaciones Especiales" ("NIE").  <u>Id.</u> at p. 2.  She began working at the PR DOJ in 2004 and she held a career position.[2]  <u>Id.</u> at ¶ 9.  Defendant Edwin Carrion-Soto ("Carrion") was the former director of the WPP. <u>Id.</u> at p. 2.  Defendant Carrion allegedly "subjected [Rivera] to a pattern of sexual harassment that culminated in a sexual assault, constructive discharge and other intentional acts . . ."  <u>Id.</u> Plaintiff contends that defendant Somoza, who was and continues to be the Attorney General of Puerto Rico, and the other defendants[3] knew about defendant Carrion's "past criminal conduct and pervasive pattern of sex discrimination" as well as defendant Carrion's sexual harassment and assault of Rivera.  <u>Id.</u> at ¶ 3.  Because only defendant Somoza filed a motion to dismiss, the Court will focus on

---

[2] In Puerto Rico, career employees are "government employees who do not occupy a policy-making position of confidence and trust." Unlike trust employees, "who are of 'free selection and removal'" and "have no constitutionally protected interest in that position," career employees do have a constitutionally protected interest in their positions. <u>Maymi v. P.R. Ports Authority</u>, 515 F.3d 20, 26-28 & 30 (1st Cir. 2008) (internal citations omitted); <u>see also</u> <u>Mercado-Alicea v. P.R. Tourism Co.</u>, 396 F.3d 46, 52 (1st Cir. 2005) (internal citations omitted).

[3] In addition to defendant Somoza, plaintiff also brings claims against defendant Victor Carbonell ("Carbonell"), Director of the NIE and defendant Carrion's direct supervisor; defendant Arleene Gardon ("Gardon"), Deputy Director of the NIE; defendant Albert Grajales ("Grajales"), Special Assistant or Assistant to defendant Somoza; and defendant Armando Sanchez ("Sanchez"), an NIE employee and the Inspector of Public Integrity.

the facts in the complaint that relate to defendant Somoza.  (See Docket No. 14.)

Rivera alleges that defendant Carrion began to work at the WPP in February 2009.  Id. at ¶ 11.  Less than one month later, defendants Somoza and Carbonell allegedly promoted defendant Carrion to be the director of the WPP even though they knew that he had previous complaints of improper sexually-related conduct in the work environment and had also been accused of domestic violence. Id. at ¶¶ 12-13.  Shortly after he began working at the WPP, defendant Carrion allegedly made "sexually charged comments" and "sexual innuendos" about plaintiff.  Id. at ¶¶ 14, 15, 16 & 22. These comments include "Look at her, how well she (plaintiff Rivera) looks in skirts!" and "Why don't you leave your husband and go away with me?"  Id. at ¶ 15.  Plaintiff allegedly told defendant Carbonell about these incidents of sexual harassment at the end of March or early April 2009 and asked to be removed from any position in which she would be supervised by defendant Carrion.  Id. at ¶ 19.

Plaintiff contends that defendant Carrion also publicly announced that any accusation of sexual harassment against him by a woman would fail because of his political connections.  Id. at ¶ 24.  Defendant Carrion allegedly began to stalk plaintiff and control whom she could call.  Id. at ¶¶ 27-28.  He also allegedly

changed her work schedule so that she would be alone in the office after regular working hours.  <u>Id.</u> at ¶ 30.  Plaintiff's complaint also describes in detail how defendant Carrion allegedly stood in the middle of plaintiff's office door to prevent her from leaving her office so that she would have to touch him if she decided to leave.  <u>Id.</u> at ¶ 31.

Plaintiff contends that in December 2009, a witness in the WPP began to "publicly expose the site's deplorable conditions."  <u>Id.</u> at ¶ 43.  Plaintiff allegedly confronted defendant Carbonell - and some of the other defendants - several more times about defendant Carrion's actions but to no avail.  <u>Id.</u> at ¶¶ 45, 46, & 49.

In January 2010, <u>El Nuevo Dia</u>, a local newspaper, allegedly published an article about the sexual harassment of WPP witnesses under defendant Carrion's direction.  <u>Id.</u> at ¶ 48.  Plaintiff alleges that defendants Somoza and Carbonell visited the WPP after the article was published and interviewed several witnesses.  <u>Id.</u> The witnesses, plaintiff alleges, told defendants Somoza and Carbonell about the mistreatment and sexual harassment of female witnesses in the program.  <u>Id.</u> Plaintiff alleges that during the weeks immediately after the publication of the <u>El Nuevo Dia</u> article, she then met with defendant Grajales, who was interviewing both WPP employees and witnesses about the allegations in the article.  <u>Id.</u> at ¶ 54.  During this interview, defendant Grajales

allegedly mentioned that he was close to "Billy," a nickname used to refer to defendant Somoza, and that he would "personally inform defendant Somoza about" plaintiff's complaints of sexual harassment.  Id.  Plaintiff also contends that several days after this meeting with defendant Grajales, plaintiff also contends that she met with defendants Grajales and Gardon at the NIE's offices in San Juan.  Id. at ¶ 56.  She alleges that defendant Gardon only told her to keep telling defendant Carbonell about defendant Carrion's conduct.  Id.

Plaintiff further contends that in February 2010, defendant Carbonell assigned her to serve as a "Safety Supervisor," where she would be under the direct supervision of defendant Carrion.  Id. at ¶¶ 51 & 64.  During that month, plaintiff also allegedly attended a hearing held at the Senate of Puerto Rico.  Id. at ¶ 57. Plaintiff alleges that after the hearing was over, she entered defendant Carrion's office to retrieve some documents that she needed.  Id. at ¶ 58.  Defendant Carrion allegedly entered the office, closed the door behind him, and cornered the plaintiff so that she could not leave.  Id.  He allegedly undressed himself partially and masturbated in front of her while telling her, "This is what you do to me."  Id.

After a series of other alleged incidents, plaintiff felt that she had "no other option than to resign to her career public

employment position." Id. at ¶ 63.  On April 8, 2010, plaintiff
allegedly presented her resignation letter to both defendants
Carrion and Carbonell.  Id.  In her letter, she asked to be
relieved from her duties as "Safety Supervisor" immediately; she
also asked for her resignation from the PR DOJ to take effect on
June 31, 2010.  Id. at ¶ 64.  On April 20, 2010, defendant Carrion
allegedly entered plaintiff's office, cornered her again, and tried
to undo plaintiff's shirt and take off her pants.  Id. at ¶¶ 66-67.
Plaintiff then allegedly met with several of the defendants,
including defendant Grajales, to discuss this incident.  Id. at
¶ 71.  During this meeting, defendant Grajales allegedly called
defendant Somoza and "reminded him about a previous conversation
they had concerning plaintiff's situation about [sic] [defendant]
Carrion."  Id.  Defendant Grajales then allegedly told plaintiff to
wait because defendant Somoza was going to meet with her and
discuss her complaints against defendant Carrion.  Id.  Plaintiff
stated that she waited but defendant Somoza never showed up and
that "[a]ccording to defendant Grajales, defendant Somoza stated
that he could not help her."  Id. at ¶ 72.

      Plaintiff states that in the Fall, 2010, another local
newspaper named Primera Hora published a series of investigative
articles about the WPP, defendant Carrion's alleged past criminal
behavior, and plaintiff's alleged commission of crimes with the

management of public funds.  Id. at ¶ 86.  After this publication,
plaintiff also alleges that she called defendant Somoza, who
refused to take her call.  Id. at ¶ 82.  She states that she left
a message for him to stop defendant Carrion's "outrageous illegal
conduct towards her."  Id. at ¶¶ 81-82.  Defendant Somoza allegedly
referred her call to one of his bodyguards and then sent a message
to her stating that he would return her call, but never did.  Id.

Plaintiff also alleges that in March 2011, defendant Somoza
sent her a letter via one of the NIE agents to ask her to appear
before the PR DOJ regarding her sexual harassment claims against
defendant Carrion.  Id. at ¶¶ 89-90.  In the letter, defendant
Somoza allegedly stated that he first learned about plaintiff's
allegations of sexual harassment from the Primera Hora articles
published in the Fall, 2010.  Id.

Defendant Carrion allegedly remained employed until April
2011, when his retirement benefits accrued.  Id. at ¶ 92.

## III. Rule 12(b)(6) Motion to Dismiss Standard

Rule 12(b)(6) allows the Court to dismiss a complaint when it
fails to state a claim upon which relief can be granted.  When
considering a motion under Rule 12(b)(6), a "court must view the
facts contained in the pleadings in the light most favorable to the
nonmovant and draw all reasonable inferences therefrom . . ."  R.G.
Fin. Corp. v. Vergara-Nuñez, 446 F.3d 178, 182 (1st Cir. 2006).

"[A]n adequate complaint must provide fair notice to the defendants and state a facially plausible legal claim." Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 11 (1st Cir. 2011). When faced with a motion to dismiss, "[a] plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action." Id. at 12 (quoting Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2009)). Any "[n]on-conclusory factual allegations [sic] in the complaint [,however,] must . . . be treated as true, even if seemingly incredible." Id. (citing Iqbal, 129 S.Ct. at 1951). Where those factual allegations "'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,' the claim has facial plausibility." Id. (quoting Iqbal, 129 S.Ct. at 1949). Furthermore, a court may not "attempt to forecast a plaintiff's likelihood of success on the merits; 'a well-pleaded complaint may proceed even if . . . a recovery is very remote and unlikely'. Id. at 13 (citing Bell Atlantic Corp v. Twombly, 550 U.S. 544, 556 (2007)). The relevant inquiry, therefore, "focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." Id. at 13.

Pursuant to Rule 12(b)(6), a court must base its determination solely on the material submitted as part of the complaint or central to it. Fudge v. Penthouse Int'l. Ltd., 840 F.2d 1012, 1015

(1st Cir. 1988).  Generally, "a court may not consider documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001).  "When . . . a complaint's factual allegations are expressly linked to - and admittedly dependent upon - a document (the authenticity of which is not challenged), [however,] that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998) (internal citation omitted). This is especially true where the plaintiff has "actual notice . . . and has relied upon these documents in framing the complaint." Watterson v. Page, 987 F.2d 1, 4 (1st Cir. 1993).

## IV. Legal Analysis

In his motion to dismiss, defendant Somoza argues (1) that plaintiff Rivera fails to state a claim upon which relief can be granted pursuant to section 1983 because she fails to plead sufficiently that defendant Somoza's individual actions resulted in a violation of the Equal Protection Clause of the Fourteenth

Amendment and the Due Process Clause of the Fifth[4] and Fourteenth Amendments; (2) that plaintiff fails to state a claim for retaliation pursuant to section 1983; (3) that defendant Somoza is entitled to qualified immunity; and (4) that plaintiff's supplemental jurisdiction claims should be dismissed. (See Docket No. 14.) The Court will first address defendant Somoza's arguments regarding section 1983, the corresponding constitutional claims, and qualified immunity. The Court will then discuss defendant Somoza's arguments regarding retaliation pursuant to section 1983. Finally, the Court will address defendant Somoza's arguments regarding supplemental jurisdiction.

**A.   Supervisory Liability Under Section 1983**

Title 42 of the United States Code, section 1983, allows "a private right of action for violations of federally protected rights." Marrero-Gutierrez v. Molina, 491 F.3d 1, 5 (1st Cir. 2007). The Supreme Court has held that section 1983 does not confer substantive rights, "but provides a venue for vindicating federal rights elsewhere conferred." Marrero-Saez v. Municipality of Aibonito, 668 F.Supp.2d 327, 332 (D.P.R. 2009) (citing Graham v. M.S. Connor, 490 U.S. 386, 393-94 (1989)). To state a claim

---

[4] Plaintiff only brings a due process clause claim pursuant to the Fourteenth Amendment. (Docket No. 1 at ¶¶ 115 & 119.) Therefore, the Court will address only defendant Somoza's arguments regarding plaintiff's Fourteenth Amendment due process claim.

pursuant to section 1983, a plaintiff must plausibly plead that
(1) she was deprived of a constitutional right; (2) that a "causal
connection exists between [defendant's conduct] and the
[constitutional deprivation]; and (3) the challenged conduct was
attributable to a person acting under color of state law. Sanchez
v. Pereira-Castillo, 590 F.3d 31, 41 (1st Cir. 2009) (citing 42
U.S.C. § 1983). Defendant Somoza, who is a supervisory defendant
in this case, does not dispute that he was acting under color of
state law. Rather, he argues that plaintiff Rivera fails to plead
sufficiently that his conduct violated her constitutional rights
guaranteed by the Fourteenth Amendment of the United States
Constitution. (See Docket No. 14.)

        The First Circuit Court of Appeals has held that a
supervisory defendant may be held liable under section 1983 for his
subordinates' conduct. Pineda v. Toomey, 533 F.3d 50, 54 (1st Cir.
2008). A court will find supervisory liability where (1) the
supervisor's subordinates violated the plaintiff's constitutional
rights, and (2) the supervisor's acts or omissions were
"affirmatively linked" to the behavior so that "it could be
characterized as supervisory encouragement, condonation or
acquiescence or gross negligence amounting to deliberate
indifference." Id. (quoting Lipsett v. University of Puerto Rico,
864 F.2d 881, 902 (1st Cir. 1998)). Thus, a supervisor may not be

held liable for a subordinate's violation of constitutional rights under a theory of *respondeat superior*. Iqbal, 129 S.Ct. at 1952 ("Absent vicarious liability, each government official, his or her title notwithstanding, is liable for his or her own misconduct."). Rather, supervisory liability must be predicated on a supervisor's own acts or omissions. Colon-Andino v. Toledo-Davila, 634 F.Supp.2d 231, 232 (2009) (internal citation omitted) ("Supervisory liability may be found either where the supervisor directly participated in the unconstitutional conduct or where his or her conduct amounts to tacit authorization."); Aponte-Matos v. Toledo-Davila, 135 F.3d 182, 192 (1st Cir. 1998) (internal citations omitted).

Moreover, "supervisory liability under a theory of deliberate indifference 'will be found only if it would be manifest to any reasonable official that his conduct was very likely to violate an individual's constitutional rights.'" Maldonado v. Fontanes, 568 F.3d 263, 275 (2009) (internal citations omitted). Liability will be found even if the supervisor does not have actual knowledge of the unconstitutional behavior. See Colon-Andino, 634 F.Supp.2d at 232 (citing Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 582 (1st Cir. 1994)). Accordingly, "liability attaches if a responsible official supervises, trains, or hires a subordinate with deliberate indifference toward the possibility

that deficient performance of the task eventually may contribute to a civil rights deprivation." Camilo-Robles v. Zapata, 175 F.3d 41, 44 (1st Cir. 1999) (internal citations omitted).  "Under such a theory, a supervisor may be brought to book even though his actions have not directly abridged someone's rights; it is enough that he has created or overlooked a clear risk of future unlawful action by a lower-echelon actor over whom he had some degree of control." Id. at 44.

The Court will first address whether plaintiff has pled sufficient facts to establish that defendant Somoza's actions were "affirmatively linked" to the other defendants' alleged unconstitutional behavior.  Then, the Court will examine whether plaintiff has sufficiently pled that defendant Somoza's subordinates violated plaintiff's constitutional rights.

## 1.   Affirmatively Linked

The Court finds that plaintiff Rivera has adequately pled that defendant Somoza's conduct was linked to the other defendants' alleged unconstitutional conduct under a theory of deliberate indifference. See Fontanes, 568 F.3d at 263; Torres Calderon v. Puerto Rico Police Dep't., No. 05-1722, 2007 WL 2428675, at *1 (D.P.R. Aug. 22, 2007).  In short, plaintiff alleges that defendant Somoza (1) improperly appointed and promoted defendant Carrion based on political cronyism to his position

without checking his past instances of inappropriate sexual conduct, and (2) failed to supervise defendant Carrion properly and investigate claims of sexual harassment allowing defendant Carrion to create a "sexually charged work environment." (Docket No. 1 at ¶¶ 12, 13, 52, 101 & 102.)

With regard to the first allegation, defendant Somoza argues that he did not appoint defendant Carrion as director of the WPP. (Docket No. 35 at pp. 2-3.) Instead, he attaches a letter[5] and a translation of the letter, which show that his predecessor, Antonio Sagardia ("Sagardia"), appointed defendant Carrion to the position on March 10, 2009. (Docket Nos. 35-1 & 40-1.) Therefore, the Court finds that defendant Somoza did not appoint defendant Carrion to his position at the WPP. The Court still finds, however, that plaintiff has sufficiently pled that defendant Somoza's conduct was still affirmatively linked to the other defendants' unconstitutional conduct.

The Court assumes that the rest of the non-conclusory factual allegations in plaintiff's complaint are true. Ocasio-Hernandez, 640 F.3d at 11 (citing Iqbal, 129 S.Ct. at 195).

---

[5] The Court will consider this letter and still decide the defendant's motion to dismiss under Rule 12(b)(6) because the "complaint's factual allegations are expressly linked to - and admittedly dependent upon - [this] document." Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998) (internal citation omitted).

Plaintiff alleges that by January 2010, defendant Somoza had visited the WPP to interview witnesses in the program about sexual harassment allegations against defendant Carrion. (Docket No. 1 at ¶ 54.)  Therefore, after defendant Carrion was appointed in March 2009, defendant Somoza replaced Sagardia as the Commonwealth's Attorney General at some point while plaintiff was being subjected to sexual harassment by defendant Carrion.  Nevertheless, defendant Somoza allegedly failed to take any action against defendant Carrion and fostered an environment in which (1) defendant Somoza approved a change in plaintiff's position such that she would work directly under the supervision of defendant Carrion, (2) defendant Carrion masturbated in front of plaintiff, (3) defendant Carrion cornered plaintiff, and attempted to undo plaintiff's shirt and take off her pants.  Id. at ¶¶ 50, 51, 58, 64, 66, & 67.  See, e.g., Torres Calderon, 2007 WL 2428675, at *1 (finding sufficient facts to support supervisory liability where plaintiffs alleged that the supervisors failed to take any action or implement a disciplinary system against subordinate officers who had been the subject of citizen complaints and had a propensity of engaging in violent acts).

        Defendant Somoza also argues that plaintiff only speculates that he was aware about the sexual harassment that was taking place.  (Docket No. 14 at p. 2.)  Plaintiff pleads,

however, that defendant Grajales called defendant Somoza in
plaintiff's presence and discussed "plaintiff's situation with
Carrion." (Docket No. 1 at ¶ 71.)  While defendant Somoza argues
that this allegation fails to describe "what situation concerning
plaintiff and Carrion was said," the Court will read the complaint
as a whole and in a light most favorable to the plaintiff and draw
the inference that the "situation" was the sexual harassment. R.G.
Fin. Corp. v. Vergara-Nuñez, 446 F.3d 178, 182 (1st Cir. 2006).
Plaintiff also alleges that one of the NIE's agents gave her a
letter that asked her to appear before the PR DOJ regarding her
sexual harassment claims against defendant Carrion.  (Docket No. 1
at ¶ 90.)  Furthermore, plaintiff alleges that she left a message
for defendant Somoza, who said that he would contact her, but
failed to do so.  Id. at ¶ 82.  These facts are sufficient to plead
that defendant Somoza knew in particular about plaintiff's sexual
harassment.

        Thus, even though plaintiff fails to plead
sufficiently that defendant Somoza improperly appointed defendant
Carrion to his position, plaintiff has sufficiently pled that
defendant Somoza failed to supervise defendant Carrion properly and
investigate claims of sexual harassment allowing Carrion to create
a "sexually charged work environment."  Moreover, plaintiff

sufficiently pleads that defendant Somoza knew about her situation in particular.

The Court finds, therefore, that the factual allegations, taken as true and considered together, show that defendant Somoza's inaction is linked to the other defendants' alleged unconstitutional conduct under a theory of deliberate indifference. "[A] favorable plausibility determination [,however,] does not necessarily herald a likelihood of success at subsequent stages of litigation. Factual allegations must be proven, evidence to the contrary must be factored into the mix, and the merits remain entirely open." Grajales v. Puerto Rico Ports Authority, 682 F.3d 40, 50 (1st Cir. 2012).

Given that the Court finds that plaintiff Rivera has adequately pled that defendant Somoza's conduct was affirmatively linked to the alleged unconstitutional conduct of his subordinates, the Court must next address whether plaintiff has plausibly pled that the subordinates violated plaintiff's constitutional rights.

## 2.   Violation of Plaintiff's Fourteenth Amendment Rights

The Fourteenth Amendment to the Constitution states, in relevant part, "nor shall any state deprive any person of life, liberty, or property, without due process of law (the "Due

Process Clause"); nor deny to any person within its jurisdiction the equal protection of laws (the "Equal Protection Clause")." U.S. Const. amend. XIV.  The Court will address arguments regarding both clauses in turn.

### a.   Equal Protection Clause

Defendant Somoza argues that plaintiff's claim under the Equal Protection Clause must be dismissed because plaintiff fails to plead sufficiently that she was treated differently from others similarly situated based on impermissible considerations.  The Court agrees with defendant Somoza.

To prove a violation of the Equal Protection Clause, a plaintiff must show that the defendant acted with discriminatory intent.  Lipsett, 864 F.2d at 896 (citing Washington v. Davis, 426 U.S. 229, 239-42 (1976)).  "Discrimination on the basis of gender violates the equal protection clause if the discrimination fails to 'serve important government objectives' and is not 'substantially related to achievement of those objectives.'" Id. (quoting Davis v. Passman, 442 U.S. 228, 234-35 (1979)). Because a showing of discriminatory intent is necessary to make out a claim of disparate treatment under Title VII, the analytical framework for proving discriminatory treatment pursuant to Title VII claims is equally applicable to claims of gender-based discrimination pursuant to the Equal Protection Clause.  See

Pontarelli v. Stone, 930 F.2d 104, 113-14 (1st Cir. 1991), *abrogated on other grounds*, Graphic Comms. Int'l. Union, Local 12-N v. Quebecor Printing Providence, Inc., 270 F.3d 1, 4-5 (1st Cir. 2001); Lipsett, 864 F.2d at 896; White v. Vathally, 732 F.2d 1037, 1039 (1st Cir.), *cert. denied*, 469 U.S. 933 (1984).

To prove a *prima facie* case of discrimination under Title VII, a plaintiff must establish by a preponderance of the evidence (1) that the plaintiff is within a protected class; (2) that his [or her] employer took an adverse action against him [or her]; (3) that [he or] she was qualified for the employment [he or] she held; and (4) that [his or] her position remained open or was filled by a person whose qualifications were similar to [his or] hers. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Douglas v. J.C. Penney Co., 474 F.3d 10, 13-14 (1st Cir. 2007); Petitti v. New England Tel. & Tel. Co., 909 F.2d 28, 32 (1st Cir. 1990). While plaintiff is a member of a protected class, she fails to demonstrate that the defendants treated her differently than other similarly situated individuals.

Plaintiff Rivera argues that she is "a member of an identifiable class for equal protection purposes if she alleges discrimination on the basis of sex." (Docket No. 21 at p. 14.) Plaintiff's complaint states that she is a woman, which satisfies a "protected class" under the McDonnell Douglas

framework.  See Dragon v. Dep't. of Mental Health, Retardation &
Hosp., 936 F.2d 32, 36 (1st Cir. 1991).  The defendant does not
dispute this.  Defendant Somoza argues, however, that plaintiff
Rivera has not demonstrated that other similarly situated
individuals were treated differently than how she was treated.

"A requirement for stating a valid
disparate treatment claim under the Fourteenth Amendment is that
the plaintiff make a plausible showing that he or she was treated
differently from others similarly situated.  A similarly situated
person is one that is roughly equivalent to the plaintiff in all
relevant respects." Estate of Bennett v. Wainwright, 548 F.3d 155,
166 (1st Cir. 2008) (internal citations and quotation marks
omitted); see also Ayala-Sepulveda v. Municipality of San German,
671 F.3d 24, 32 (1st Cir. 2012) ("some evidence of actual disparate
treatment is a 'threshold requirement' of a valid equal protection
claim.")  Plaintiffs who claim membership in a protected class or
group need to plead that, "compared with others similarly situated,
[she] was selectively treated . . . based on impermissible
considerations such as race, religion, intent to inhibit or punish
the exercise of constitutional rights, or malicious or bad faith
intent to injure a person." Marrero-Gutierrez, 491 F.3d at 9
(internal citation and quotation marks omitted).  Individuals may
also base an equal protection claim on a "class of one" theory if

a plaintiff alleges sufficient facts that he or she was "impermissibly singled out for unfavorable treatment." Cordi-Allen v. Colon, 494 F.3d 245, 250 (1st Cir. 2007.  There is no precise formula, however, for determining whether individuals are similarly situated.  Id.

Plaintiff Rivera has identified specific instances where she received unfavorable treatment from all of the subordinate officers but nowhere in the complaint does she allege that she was treated differently from others who were similarly situated.  (See Docket No. 1.)  Indeed, she states in the complaint that she, along with other women who were present at the WPP office, were interviewed by defendant Grajales and defendant Carbonell about defendant Carrion's alleged sexual harassment of females in the WPP office.  (Docket No. 1 at ¶ 48, 49, 52, & 54).  These facts suggest that she was not, in fact, treated differently from others similarly situated, which are her co-workers or other people who were regularly present in the WPP office.  Aside from these facts, she mentions no other fact to support the idea that she received selective treatment.  Furthermore, plaintiff spends five pages in her opposition to defendant Somoza's motion to dismiss addressing why she has sufficiently pled a Equal Protection Clause claim but does not address this issue at all.  Because plaintiff fails to plead facts for plausible relief sufficiently

pursuant to the Fourteenth Amendment's Equal Protection Clause, defendant Somoza's motion to dismiss plaintiff River's section 1983 claim for equal protection violation pursuant to the Fourteenth Amendment is **GRANTED**.

### b.    Due Process Clause

Defendant Somoza also asserts that plaintiff's due process claims should be dismissed.  A plaintiff may assert two types of due process rights:  substantive due process and procedural due process.  <u>Maymi</u>, 515 F.3d at 29.  Plaintiff fails to specify, however, which type of due process claim she is pursuing. Rather, "[c]ounsel seems to view the Constitution as merely a buffet table of violations ripe for listing in the complaint, leaving the Court to fill in the logical blanks. <u>Colon-Andino</u>, 634 F.Supp.2d at 232 n. 21.  In response to defendant Somoza's argument that plaintiff fails to state in her complaint whether her claim rests on substantive or procedural due process, (Docket No. 14 at p. 13), plaintiff merely states that the terms and conditions of her employment, a protected property interest, were so terrible that she was left "with no other option than to . . . resign." (Docket No. 21 at pp. 18-19.)  Reading the complaint as a whole, then, the Court finds that plaintiff Rivera avers that she has been denied substantive due process.  She fails to state any fact in support of a procedural due process claim,

including what process was due to her, if any.  Therefore, the
Court will analyze plaintiff's claim only under a substantive due
process theory because a procedural due process claim has not been
pled.

              To assert a substantive due process claim,
a plaintiff must plead sufficient facts to show that (1) a
defendant's actions are "so egregious as to shock the conscience,"
and (2) the acts deprived the plaintiff of a protected life,
liberty or property interest.  Harron v. Town of Franklin, 660 F.
3d 531, 536 (1st Cir. 2011).  The Court first addresses whether
plaintiff was deprived of a protected interest and then determines
whether the defendants' behavior was egregiously unacceptable,
outrageous or conscience-shocking.

### i.    Protected Property Interest

              Property interests are not derived
from the Constitution of the United States; rather, "they are
created and their dimensions are defined by existing rules or
understandings that stem from an independent source such as state
law . . ." Colon-Santiago v. Rosario, 438 F.3d 101, 108 (1st Cir.
2006).  The First Circuit Court of Appeals has turned consistently
to Puerto Rico law for guidance on property interests.  Id.; see
also Santana v. Calderon, 342 F.3d 18, 23-24 (1st Cir. 2003).
Puerto Rico law grants career government employees a property

interest in their continued employment and therefore, their job. Colon-Santiago, 438 F.3d at 108; see also Ruiz-Casillas v. Camacho-Morales, 415 F.3d 127, 134 (1st Cir. 2005). Public employees do not have a property interest, however, in the duties and functions that they perform for their employer. Ruiz-Casillas, 415 F.3d at 134 (holding that the plaintiff did not have a claim under the Fourteenth Amendment because he only had his duties downgraded but he was not fired). Plaintiff Rivera was not terminated from her career position. She alleges, however, that her work environment was so unbearable that it forced her to resign, which constitutes a constructive discharge. (Docket No. 1 at p. 2.) Therefore, because plaintiff plausibly pleads that she has been constructively discharged from her career position, the Court finds that she has been deprived of a property interest.

### ii. Egregiously Unacceptable, Outrageous or Conscience-Shocking Conduct

"A substantive due process claim requires allegations that the government conduct was, in and of itself, inherently impermissible irrespective of the availability of remedial or protective procedures." Maymi, 515 F.3d at 30 (internal citation omitted)); Amsden v. Moran, 904 F.2d 748, 754 (1st Cir. 1990) (the conduct by state actors in a substantive due process claim must "be egregiously unacceptable, outrageous, or

conscience-shocking"). The First Circuit Court of Appeals has reaffirmed the Supreme Court's warning that "the activities complained of must do more than offend some fastidious squeamishness or private sentimentalism." Cruz-Erazo v. Rivera-Montanez, 212 F.3d 617, 622 (1st Cir. 2000) (internal citations and quotation marks omitted). The First Circuit Court of Appeals has consistently found governmental conduct to be egregiously unacceptable, outrageous, or conscience-shocking when state action is "highly physically intrusive." Id. (internal citations omitted) (discussing how the Supreme Court and the First Circuit Court of Appeals have found, respectively, that conscience-shocking state action where a suspect's stomach was forcibly pumped to obtain evidence and where a suspended officer had to undergo a penile plethysmograph to be reinstated). "Verbal or other less physical harassment" generally does not rise to a conscience-shocking level. Id. (internal citations omitted)(discussing how no constitutional violation occurred where public school students had to attend a sexually explicit AIDS awareness production and where an inmate slipped on pillow that was a negligently placed by a prison employee). Furthermore, "[l]iability for negligently inflicted harm is categorically beneath the constitutional due process threshold." Funeraria Del Noroeste Inc. v. Funeraria San Antonio, No. 11-1595, 2012 WL 3069970, at *5 (D.P.R. July 27, 2012).

Plaintiff has sufficiently pled facts to establish that the defendants' actions were "egregiously unacceptable, outrageous, or conscience-shocking." Amsden, 904 F.2d at 754.  Plaintiff has alleged multiple specific instances where defendant Carrion engaged in "highly physically intrusive" behavior. Cruz-Erazo, 212 F.3d at 622 (internal citation omitted). She stated that (1) he stood in front of her doorway to force her to touch him when she left her office, (2) he masturbated in front of her, and (3) he tried to take off her clothing.  (Docket No. 1 at ¶¶ 31, 58, & 67.) Furthermore, plaintiff Rivera has alleged that she confronted defendants Carbonell, Gardon, Grajales, and Sanchez about defendant Carrion's behavior to no avail.  Id. at ¶¶ 19, 37, 40, 44, 45, 46, 54, 56 & 71.  Rivera also pled that defendants Carbonell and Gardon even began to joke that defendant Carrion was in love with the plaintiff.  Id. at ¶ 32.  She also alleges that some of these defendants, such as defendants Carbonell and Grajales, knew about the harassment but just told her to stay strong or to not tell her husband about it.  Id. at ¶¶ 40-41.  The alleged facts suggest that this is not merely a situation in which these defendants were negligent in supervising defendant Carrion. Indeed, reading the complaint in a light most favorable to the plaintiff, the Court finds that the defendants knew about the sexual harassment but chose not to discipline defendant Carrion;

that lack of discipline may have encouraged him to continue his actions.

Therefore, because plaintiff Rivera has plausibly pled that the subordinates violated plaintiff's constitutional rights and that defendant Somoza's actions were affirmatively linked to the subordinates' actions, defendant Somoza's motion to dismiss plaintiff's substantive due process claim is **DENIED**. As with plaintiff's supervisory liability claims, "a favorable plausibility determination does not necessarily herald a likelihood of success at subsequent stages of litigation." Grajales v. Puerto Rico Ports Authority, 682 F.3d 40, 50 (1st Cir. 2012). Plaintiff Rivera still must be able to prove the factual allegations stated in her complaint. Id.

### c.   Qualified Immunity

The doctrine of qualified immunity "provides defendant public officials an immunity from suit and not a mere defense to liability." Fontanes, 568 F.3d at 268 (internal citation omitted). Defendant public officials are entitled to qualified immunity unless "(1) the facts alleged or shown by plaintiff make out a violation of a constitutional right and (2) such right was clearly established at the time of the defendant['s] alleged violation[s]." Feliciano-Hernandez v. Pereira-Castillo, 663 F.3d 527, 532 (1st Cir. 2011) (citing

Fontanes, 568 F.3d at 269).  In his motion to dismiss, defendant
Somoza argues that plaintiff fails to allege facts to establish a
violation of a constitutional right, and therefore, the Court need
not address the second prong of the analysis.  (Docket No. 14 at
pp. 21-22.)  Defendant Somoza fails to make any arguments about the
second prong of the qualified immunity analysis.  Therefore, the
Court declines to address this argument at this stage.[6]  See United
States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not
enough merely to mention a possible argument in the most skeletal
way, leaving the court to do counsel's work, create the ossature
for the argument, and put flesh on its bones.")

    Accordingly, defendant Somoza's motion to
dismiss based on qualified immunity is **DENIED without prejudice** of
being raised in a motion for summary judgment or at trial.

## IV.  Plaintiff's Title VII Retaliation Claim

  Defendant Somoza argues that "[a]lthough plaintiff does not
make a direct claim of retaliation, she avers certain conduct by
agents of the [NIE] that may be construed as allegation of

---

[6] Defendant Somoza, however, may raise this defense at a later
stage of this litigation, "on a more developed factual record."
Sanchez v. Pereira-Castillo, 590 F.3d 31, 52 n. 15 (citing Jordan
v. Carter, 428 F.3d 67, 76 n. 4 (1st Cir. 2005) ("[D]enial of
immunity at the motion-to-dismiss stage does not preclude renewal
of the defense in a subsequent motion for summary judgement or at
trial").

retaliation." (Docket No. 14 at p. 14.)  Plaintiff's complaint,
however, fails to allege any claim of retaliation pursuant to Title
VII or pursuant to section 1983.  In her opposition to defendant's
motion to dismiss, plaintiff requests the court to deny defendant
Somoza's motion to dismiss retaliation claim she now alleges she
pled. (Docket No. 21 at pp. 22-24.)  In the alternative, plaintiff
requests that the Court allow her to amend her complaint to "more
expressly identify the retaliation claim as one of the causes of
action for which relief should be granted."  Id. at p. 24.  The
Court **GRANTS** plaintiff's request to amend her complaint but
cautions plaintiff to limit any amendment only to her alleged
retaliation claim and to state clearly under which law she is
bringing her retaliation claim.  Plaintiff may not re-allege any
claim that the Court has dismissed.

Accordingly, defendant Somoza's motion to dismiss for failure
to state a claim for retaliation pursuant to section 1983 is **MOOT.**

## V.   Plaintiff's Supplemental Commonwealth Law Claims

Because the Court denies in part defendant Somoza's motion to
dismiss for failure to state a claim, plaintiff's federal claims
remain to ground jurisdiction over plaintiff's claims pursuant to
Commonwealth law.  28 U.S.C. § 1367(c)(3).  The Court will continue
to exercise its supplemental jurisdiction over the Commonwealth law

claims.    Accordingly,  defendant  Somoza's  motion  to  dismiss

plaintiff's supplemental commonwealth claims is **DENIED**.

## VI.  Conclusion

    For the reasons expressed, the Court **DENIES** defendant Somoza's

motion to dismiss for failure to state a claim for supervisory

liability pursuant to section 1983 and the Due Process Clause of

the  United  States  Constitution.    The  Court,  however,  **GRANTS**

defendant Somoza's motion to dismiss with prejudice for failure to

state a claim for Equal Protection Clause violations.    The Court

**DENIES without prejudice** defendant Somoza's motion to dismiss the

case based on a doctrine of qualified immunity.    The Court also

**DENIES** his motion to dismiss the supplemental Commonwealth law

claims.  Finally, the Court **GRANTS** plaintiff's request to amend her

complaint but only to add a retaliation claim; therefore, the Court

finds  that  defendant  Somoza's  motion  to  dismiss  plaintiff's

retaliation claim is **MOOT**.

    **IT IS SO ORDERED.**

San Juan, Puerto Rico, September 28, 2012.

                                       s/ Francisco A. Besosa
                                       FRANCISCO A. BESOSA
                                       UNITED STATES DISTRICT JUDGE